Betty Hansen, et al. [1] v. Commissioner. Hansen v. Commissioner
Docket Nos. 29419, 29420, 29421.
United States Tax Court
1952 Tax Ct. Memo LEXIS 132; 11 T.C.M. (CCH) 781; T.C.M. (RIA) 52236; July 28, 1952
Henry W. Howard, Esq., 1101 Balfour Bldg., San Francisco, Calif., for the petitioners. T. M. Mather, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion [2]
HARRON, Judge: The respondent has determined deficiencies in the petitioners' income tax liability for the calendar year 1946 as follows: Betty Hansen
$12,558.75
Carl L. Hansen and Norma
W. Hansen
12,956.21
Benjamin C. Mickle
4,144.06
The question for decision is what was the fair market value of shares of preferred and common stock of the Bear Film *133 Co., received by each of the petitioners during 1946 as follows: Petitioners
Shares
Betty Hansen
550
Carl Hansen
550
Benjamin Mickle
275
Total
1375
The petitioners filed their income tax returns with the collector for the first district of California. The record in these proceedings is comprised of a stipulation of facts, oral testimony, and documentary evidence. Findings of Fact The facts which have been stipulated are found as facts. The stipulation of facts is incorporated herein by this reference. The findings of fact and conclusions of law of the California Superior Court in the case of Virginia J. Hansen v. Bear Film Co., et al. Case No. 296,867, are also incorporated herein by this reference. In October, 1946, the petitioners Betty Hansen and Carl L. Hansen received the amount of $34,500 and 687 1/2 shares of the preferred stock and 687 1/2 shares of the common stock of the Bear Film Company from Virginia Hansen Vincent pursuant to a written agreement which they had entered into on February 13, 1941, and which was modified on January 7, 1946. [3] The petitioners, Betty and Carl Hansen, had, during 1940 and 1941, supplied Virginia Hansen Vincent *134 with certain information and documentary evidence pertaining to her rights of ownership in the stock of the Bear Film Co. In October, 1946, the petitioners, Betty and Carl Hansen each assigned under the agreement 137 1/2 shares to the petitioner Benjamin Mickle as compensation for legal services which he had performed on their behal. For purposes of this proceeding, the parties have agreed that the preferred and common stock were equal in value, share for share in October, 1946. The Bear Film Co., a California corporation, is engaged in the business of developing film, finishing photographs, and wholesaling film and cameras used in the finishing of photographs. It has its principal place of business at San Francisco, California, and a branch office at Oakland, California. The Bear Film Co., sometimes hereinafter referred to as Bear, was originally founded as a partnership many years prior to 1921 by Warren Quinn and Oscar Hansen as partners. It was organized as a corporation in 1921. *135 Oscar Hansen, alone, directed the management and operations of the business of Bear as president, general manager, and member of the Board of Directors. Also, Oscar had virtually absolute control over the Board of Directors and dominated its policies. In 1929, Oscar died intestate, leaving as his sole surviving heir his daughter, Virginia Hansen Vincent. At the time of his death Oscar was the beneficial owner of all the authorized and outstanding shares of preferred and common stock of the Bear Film Co., namely 2500 shares of preferred stock and 2500 shares of common stock. In 1929, after Oscar's death, his brother Albert, who had been a professor at Purdue University, undertook the management of the business of the company at the request of his mother, Josephine Hansen. Albert succeeded to Oscar's positions as president, general manager, and member of the board of directors and successfully continued the business of Bear as a one-man operation. Albert Hansen died in 1940. After his death George L. Thompson, who had been in the employ of Bear since 1932, was promoted from the position of vice president to the position of president and general manager. In 1940 the preferred *136 and common stock of Bear were being held in trust by Bear for members of the family of Albert Hansen, deceased, and for the estate of Albert Hansen. In 1940 Virginia Hansen Vincent instituted suit in the Superior Court of California in and for the City and County of San Francisco against Bear and others for recovery of the stock and other relief. Virginia J. Hansen v. Bear Film Co., et al., Case No. 296,867 (unreported). Betty and Carl Hansen supplied Virginia with testimony and records which assisted her in establishing ownership to the stock. In order to obtain this evidence and the services of her attorneys in the litigation, Virginia entered into a written agreement with Betty and Carl Hansen and her attorneys on February 13, 1941. This agreement was amended on January 7, 1946. Under the agreement as amended Virginia agreed that: (1) The first $50,000 of any judgment would be divided one-half to Virginia and one-half to Betty and Carl after first deducting all attorneys' fees and other litigation costs; (2) If the recoveries exceeded $50,000, the second $50,000 recovered would go entirely to Virginia; (3) Any amounts recovered in excess of $100,000 and up to $200,000 would be *137 divided one-half to Virginia and one-half to Betty and Carl; (4) Any amounts recovered in excess of $200,000 would be divided 65 percent to Virginia and 35 percent to Carl and Betty; (5) Virginia's attorneys would receive as fees for prosecuting Virginia's suit against Bear and Albert Hansen's estate, 25 percent of the gross amount recovered. Judgment was awarded to Virginia Hansen Vincent in 1943. Besides recovering the stock, she received money awards plus interest from the Bear Film Co. in the amount of $144,154.38. The judgment was affirmed and made final by the Supreme Court of California on May 7, 1946. A "Receipt of Assignees," signed by the petitioners Carl and Betty Hansen, was filed in the Superior Court of California on October 11, 1946. It recited the receipt by the petitioners Carl and Betty Hansen of 687 1/2 shares of preferred stock and 687 1/2 shares of common stock and the amount of $34,500 from Virginia Hansen Vincent in full discharge of their claims against her under the agreement of February 13, 1941, as amended. Thereupon the petitioners Carl and Betty Hansen paid one-fifth of what they had received from Virginia - 137 1/2 shares of common and 137 1/2 shares *138 of preferred stock and the sum of $6,900 - to the petitioner Benjamin C. Mickle in consideration for legal services which he had rendered to them. The stock received by each of the petitioners constituted a minority interest. Earnings in the photo finishing business fluctuate widely from year to year, being dependent on a number of variables. The earnings of the business are very susceptible to increased competition and are almost entirely dependent upon weather conditions. It is a seasonal business with the largest volume of business coming in the late spring, summer, and early fall, when optimum weather conditions generally prevail for the taking of pictures. Labor costs in the photo finishing business form a large part of the cost of doing business, generally ranging from 30 to 60 percent of total costs. The net income of Bear after taxes and the net income per share of common and preferred stock for the years 1936 to 1948. inclusive, were as follows: Net Income
Per Share of
Common and
Year
Net Income
Preferred Stock
1936
$ 24,529.22
$ 4.91
1937
33,770.40
6.75
1938
24,805.73
4.96
1939
20,556.43
4.11
1940
8,131.55
1.63
1941
107.76
.02
1942
39,677.02
7.94
1943
24,212.36
4.84
1944
25,764.55
5.11
1945
28,840.68
5.77
1946
$ (5,538.76) *
[1.11)
1947
22,941.30
4.59
1948
(39,245.54)
(7.85)
*139 The average earnings after taxes of Bear Film Co. per share of common and preferred stock for the period 1936 to 1945, inclusive, was $4.61, and for the period 1936 to 1946, inclusive, $4.09. Earnings were depressed in 1940 and 1941 because of additional competition and prolonged price wars during that period. After the war competition again was substantially increased. Although the photo finishing business requires specialized skills, many returning veterans, who had acquired photography skills while in the Armed Services, went into the business in 1946. During the first nine months in 1946 Bear operated at a profit, but increased labor costs during the last three months of the year resulted in the net loss which Bear sustained for that year. Employees' wages were again increased in 1947 and 1948 pursuant to new union contracts entered into by Bear in each year. George Thompson was retained as president and general manager of the business of the corporation after Virginia Hansen Vincent assumed ownership of the controlling interest. In 1946 his annual compensation was increased *140 from the amount of $9,000 to the amount of $12,000. For seven months of services which he rendered in 1946 as operating manager, J. D. Vincent, Virginia's husband, received salary from Bear in the aggregate amount of $8,250. In 1947 J. D. Vincent's salary was fixed at the sum of $15,000 per year. In 1946 A. B. Bianchi was employed by Bear as general counsel at a retainer fee of $750 per month. While Bear was well equipped in 1946 with the machinery and supplies necessary for its business, it was faced with the prospect of having to replace much of its costly equipment soon. Machinery was impossible to replace during the war so that in 1946 much of Bear's equipment was rapidly becoming obsolete. Ordinarily the equipment used in the photo finishing business has a very short useful life because of its constant exposure to acids and chemicals. The balance sheet on December 31, 1945 and December 31, 1946, was as follows: December
December
Assets
31, 1945
31,1946
Cash
$122,780.01
$ 50,417.78
Notes and Accounts Re-
ceivable
41,667.14
59,135.85
Inventories
48,687.18
49,231.80
Investments in Govern-
mental Obligations
90,000.00
Good Will Purchased
30,028.15
36,093.15
Branch stores, net in-
vestment
Total Capital Assets
109,274.21
131,905.35
Reserve for Deprecia-
tion
63,143.04
67,834.24
Land
17,486.88
17,486.88
Refund Claim, Income
Taxes
63,928.64
Post War Tax Credit
Bonds for Employees
30.87
Deferred Expense
1,843.50
3,862.47
$398,624.03
$344,258.55
Liabilities
Bank Account, Over-
draft
Accounts Payable
$ 14,714.79
$ 39,664.82
Notes Payable -
Maturity, Less than
1 yr.
30,000.00
Maturity, More than
1 yr.
34,402.12
Miscellaneous Taxes
9,058.33
8,748.24
Federal Taxes
39,409.02
Account with Stockhold-
er
Accrued Interest
187.50
Accrued Payroll Items
5,676.81
Contingent Account
Virginia Hansen, Trans-
feree
4,783.47
Capital Stock
Preferred Stock
$ 2,500.00
$ 2,500.00
Common Stock
2,500.00
2,500.00
Earned Surplus
296,039.77
250,197.71
Total Liabilities and
Capital
$398,624.03
$344,258.55
*141 On the books of the company the fixed assets were conservatively valued at cost less depreciation, which amount was lower than their fair market value. The balance of earned surplus on December 31 of the years 1937 to 1948, inclusive, was as follows: Year
Earned Surplus
1937
$165,460.84
1938
163,423.97
1939
164,488.16
1940
169,488.51
1941
164,767.48
1942
229,200.88
1943
242,536.53
1944
267,329.43
1945
$ 296,039.77
1946
250,197.71
1947
276,328.29
1948
236,777.65
No dividends had been declared or paid by the company subsequent to 1941. On December 31, 1945, and December 31, 1946, Bear had net working capital in the respective amounts of $149,952.19 and $74,508.06. The book value of the stock on December 31, 1945 and December 31, 1946, was $60.21 and $51.04, respectively. Bear had installed a color laboratory in 1946 in order to take advantage of the business resulting from color processing which was a new development in the photo finishing field. In 1947 Bear entered into an arrangement in the photo finishing field. In 1947 Bear entered into an arrangement with the Ansco Co., a film manufacturer, whereby Bear was to represent the Ansco *142 Co. in the processing of color film in California. The company was one of a number of processors throughout the country selected by the Ansco Co. on the basis of the quality of its work. Subsequent to their becoming stockholders in Bear, a dispute arose between the petitioners Carl and Betty Hansen as minority stockholders and Virginia Hansen Vincent as majority stockholder in reference to the management and policies of the company. The petitioners were disgruntled primarily by their lack of representation on the board of directors, the increase in George Thompson's salary, the employment of J. D. Vincent at a relatively high salary for a person inexperienced in the business of Bear, and the failure of the board of directors, which was controlled by the majority stockholder, to declare and pay dividends on the stock. The petitioner Carl Hansen was then elected to the board of directors. Nevertheless, the petitioners Carl and Betty Hansen were still not satisfied with their status as minority stockholders. Finally in the latter part of 1947 Judge Zook, their attorney, suggested to A. B. Bianchi, attorney for Bear and Virginia Hansen Vincent, that those in control of Bear submit a *143 bid price for the stock held by the petitioners Carl and Betty Hansen and purchase it from them. At about that time George Thompson expressed an interest in acquiring some of the stock. Being president of Bear, he felt that he should also be represented in the ownership of the company as a stockholder. When Thompson informed A. B. Bianchi in January, 1948, that he definitely wanted to purchase the stock held by the petitioners Carl and Betty Hansen, Bianchi told him that the total price for the 1100 shares was $65,000 or about $59 per share. The price was acceptable to Thompson; he did not attempt to purchase the stock at a lower amount. Bianchi on behalf of Thompson then submitted an offer in the aggregate amount of $65,000 for the purchase of the stock, and it was accepted by the petitioners Carl and Betty Hansen through their attorney. The sale was executed on February 4, 1948. Thompson made a down payment in the amount of $30,000 toward the purchase price of the stock, agreeing to pay the balance of the purchase price in installments. The stock was to be held in escrow by Judge Zook until the full purchase price had been paid. The stock was then to be turned over to Thompson. *144 In order to enable Thompson to buy the stock, Bianchi and the Vincents had agreed to loan him any part of the amounts which he would need to meet the installment payments on the stock. Pursuant to this agreement, Thompson borrowed certain sums from Bianchi. The petitioner Benjamin Mickle endeavored to increase a loan account which he had at a bank by depositing the stock, as collateral, for the loan. He was unsuccessful, however, because the bank did not consider the stock acceptable as collateral. In 1948, after the petitioners Carl and Betty Hansen had sold their stock, the petitioner Benjamin Mickle assigned his 275 shares of stock to Bianchi for consideration in the aggregate amount of $16,500 or $60 per share. At the time that the sale was consummated, the petitioner Benjamin Mickle was aware of the controversy that had developed between the other petitioners and Virginia Hansen Vincent and the sale of their shareholdings by the other petitioners as a result thereof. The stock of Bear was not listed on any stock exchange. It was closely held. Other than the sales by the petitioners in 1948, there was no trading of the stock in recent years. Neither was there a record of any *145 bid or asked prices. The fair market value of the common and preferred stock received by each of the petitioners was $46 per share in October, 1946. Opinion Issue 1. In Docket Nos. 29419 and 29420, Betty Hansen and Carl Hansen, petitioners, there was presented in the pleadings the question whether income, under section 22 (a) of the Code was received in 1946, represented by the value of 550 shares of stock of Bear Film Co. which each petitioner received from Virginia Hansen Vincent. On brief the petitioners Betty and Carl Hansen have not argued this question. We assume and conclude, therefore, that they have abandoned this issue, and that they now agree that they realized income upon receipt of 550 shares of stock. In Docket No. 29421, Benjamin C. Mickle, petitioner, no such issue was raised, regarding the 275 shares of Bear stock which he received from the Hansens as compensation for legal services which he rendered. He concedes that receipt of the stock constituted income. The petitioners, Betty and Carl Hansen, in fact, each received 687 1/2 shares of Bear stock from Virginia Hansen Vincent. However, the determination of the respondent increasing their taxable income *146 was based upon the 550 shares which each retained after compensating the petitioner Mickle for his services. Therefore, with respect to the petitioners Betty and Carl Hansen we are to determine, in each case, the fair market value of 550 shares, not 687 1/2 shares of Bear Film Co. stock; and in Mickle's proceeding, the fair market value of 275 shares. The amount of income realized by each petitioner is to be computed on the basis of this Court's determination of the fair market value in October, 1946, of the stock of Bear Film Co. Issue 2. The question to be decided is the fair market value in October, 1946, of the shares of preferred and common stock of Bear Film Co. which were received by each petitioner. For the purposes of this proceeding the parties have agreed that the shares of preferred and common stock had the same value in October, 1946. The petitioners contend that the stock had a fair market value of not more than $25 per share, while the respondent has determined that the stock had a value of $61.17 per share in October, 1946. Consideration must be given to all the relevant factors which have a bearing on fair market value. . *147 After considering all of the evidence, it has been found as a fact that the stock had a fair market value of $46 per share in October, 1946. The respondent places a great deal of emphasis on the fact that on February 4, 1948, the Hansens sold their combined total of 1,100 shares of stock to George Thompson for $65,000 or $59.09 per share, and that later in 1948, Mickle sold his 275 shares of stock to A. B. Bianchi for $60 a share. Sales of stock made close to the pertinent date are usually regarded as best reflecting the amount at which a willing buyer and a willing seller would have contracted a sale of the stock on the date in question. . In this case, however, the sales were not made within a reasonable period close to the valuation date. The sales were made at dates fifteen months after the critical date, i.e., October, 1946. See ; . Besides not being timely, the purchases and sales in 1948 appear to have been actuated by other considerations than the value of the stock. In addition to the stock, the purchasers, *148 Thompson and Bianchi, were securing something of substantial value. Thompson's position as president of Bear Film Co., and Bianchi's employment as attorney for Bear, were made more secure by reason of their having acquired representation in the ownership of the company. Furthermore, the stock was unlisted and these were the only sales of the stock in recent years. Although the sales of stock in 1948 are given consideration, they are not under the circumstances conclusive as to the fair market value of the shares in question. . We, therefore, have considered other evidence as to value. The respondent relies to a great extent on the net worth of Bear Film Co. as indicative of the fair market value of the stock. But to consider only the factor of book value under all of the evidence in this proceeding would be error. Although a prospective buyer would take book value into consideration, he would look to other factors, where the company is a going concern without prospect of liquidation. Each lot of stock involved here represents a minority interest in Bear Film Co., and "minority interests in a 'closed' corporation are usually worth much *149 less than the proportionate share of the assets to which they attach." . Also, see ; , revsd. on another point, . Unlisted stock, representing a minority interest in a family controlled, close corporation has limited marketability. See . The respondent, however, has failed to recognize the difference in value represented by a minority interest and a controlling interest in a close corporation where the stock is unlisted and has no established market. Also, the respondent has not given sufficient weight to the following facts: The labor costs of Bear represent a large part of its cost of doing business, and the employees of the Company were demanding and getting higher wages. The salaries of officers were substantially increased during 1946. There was intensive competition in the photo finishing business after the war. The business was seasonal. There was need for replacing machinery and equipment which had become obsolete. The stock was not acceptable *150 as liquid collateral for a loan. The company had failed to pay dividends after 1941. Furthermore, the respondent has not presented any evidence and did not call any expert witness to give his opinion of fair market value. We think that a value of $61.17 per share, as determined by the respondent, is too high. The petitioners presented the opinion of an expert witness, Grieder, on the fair market value of the stock. He testified that the fair market value of the stock was $38between and $48 per share. We have given consideration to all of his testimony. Like the respondent, the petitioners have minimized the importance of certain factors and overemphasized the weight of other factors bearing on fair market value. The calculations of the petitioners' witness do not take into consideration the changes in earned surplus during 1946 prior to the critical date. Whatever effect the judgment against Bear had on book value is reflected in the surplus account in 1946, but no attention is given to this by Grieder. The method used by him does not give weight or consideration to the condition of the company in October, 1946. Bear Film Co. had had a very good record of earnings during a period *151 of over 10 years prior to the basic valuation date. The balance of accumulated surplus was a favorable factor. Also, in 1946 the company had installed a laboratory for the purpose of processing color film, a new development in the photo finishing industry. It was expected that expansion into this new field would increase the business and profits of the company. The income that stock will fetch in the future is a factor which affects fair market value. . However, the petitioners, apparently, have not given recognition to these factors. The value claimed by each of the petitioners is, therefore, too low, in our opinion. We have carefully considered and analyzed all of the evidence, - the various exhibits and all of the testimony, and have given weight to all the relevant factors. We recognize that each lot of stock is to be valued separately. We conclude and have found as a fact that the shares of stock in each lot had a fair market value in October, 1946, of $46 a share. Decision will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Carl L. Hansen and Norma W. Hansen, Docket No. 29420, and Benjamin C. Mickle, Docket No. 29421.↩
2. The Court by its ORDER has vacated and set aside a memorandum report in this proceeding which was entered on May 15, 1952. This report is entered in place of the previous report.↩
3. However, the respondent has determined that 550 shares, not 687 1/2 shares of stock of the Bear Film Company, constitutes taxable income to each of the petitioners, Betty Hansen and Carl Hansen.↩
*. The amount of the judgment rendered against Bear in 1946 was not deducted from gross income.↩